IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| ZACK CAINE HERRELL,<br><br>Plaintiff,<br><br>vs.<br><br>THOMAS W. LYNCH and SGT. NEWTON,<br><br>Defendants. | Cause No. CV 08-062-GF-SEH-RKS<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

On January 18, 2008, during the course of arresting Mr. Herrell

for escape from the Great Falls Prerelease Center, Defendants Newton

and Lynch shocked Mr. Herrell one time on the arm with a Taser.

Based upon that incident, Mr. Herrell sued for excessive use of force

and malicious prosecution.  (Court Doc. 6).

Defendants Lynch and Newton filed their Motion for Summary

Judgment on March 5, 2010.  (Court Doc. 24).  Mr. Herrell did not file a

response.  After careful review of the record, the Court recommends

Defendants' Motion be granted and this matter dismissed.

I.  MOTION FOR SUMMARY JUDGMENT

A.  Standard

A party is entitled to summary judgment if they can demonstrate

"that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ.

P. 56(c).  That is, where the documentary evidence permits only one

conclusion, summary judgment should be granted.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of

informing the Court of the basis of its motion and identifying those

portions of the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, it believes

demonstrate the absence of any genuine issue of material fact.  Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the moving party has met its initial burden with a

properly supported motion, the party opposing the motion "may not rest

upon the mere allegations or denials of his pleading, but . . . must set

forth specific facts showing that there is a genuine issue for trial."

Anderson, 477 U.S. at 248.  The non-moving party may do this by use of

affidavits (including his own), depositions, answers to interrogatories,

and admissions.  Id.  Only disputes over facts that might affect the

outcome of the suit under the governing law are "material" and will

properly preclude entry of summary judgment.  Id.

At the summary judgment stage, the judge's function is not to

weigh the evidence or determine the truth of the matter, but to

determine whether there is a genuine issue for trial.  If the evidence is

merely colorable or is not significantly probative, summary judgment

may be granted.  Anderson, 477 U.S. at 249-50.

> The mere existence of a scintilla of evidence in support of
> the [non-moving party's] position will be insufficient; there
> must be evidence on which the jury could reasonably find for
> the [non-moving party].  The judge's inquiry, therefore,
> unavoidably asks whether reasonable jurors could find by a
> preponderance of the evidence that the plaintiff is entitled to

a verdict.

Anderson, 477 U.S. at 252.

Mr. Herrell did not file a response to Defendants' Motion for

Summary Judgment.  Local Rule 7.1(d)(1)(B) provides that a failure to

file a response brief may be deemed an admission that the motion is

well-taken.  But, the Ninth Circuit has held,

> [a] district court may not grant a motion for summary
> judgment simply because the nonmoving party does not file
> opposing material, even if the failure to oppose violates a
> local rule.  However, when the local rule does not require,
> but merely permits the court to grant a motion for summary
> judgment, the district court has discretion to determine
> whether noncompliance should be deemed consent to the
> motion.

Brydges v. Lewis, 18 F.3d 651, 652 (9th Cir. 1994)(per curiam)(internal

citations omitted).

Given that Mr. Herrell is a pro se litigant, the Court will not

deem Mr. Herrell's failure to respond as consent to the motion and will

review Defendants' Motion to determine whether summary judgment is

appropriate.

B.     Parties

Mr. Herrell is a former prisoner currently on probation.  Although

FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE–
CV 08-0062-GF-SEH-RKS / PAGE 4 OF 19

the Department of Corrections website (www.cor.mt.gov), Mr. Herrell

was released from custody sometime in December 2009.  Mr. Herrell

has not updated his address with the Court in violation of Local Rule

5.5(a).

The named Defendants are Officer Thomas W. Lynch and Sgt.

Jeff Newton, both with the Great Falls Police Department

C.    Statement of Facts

In August 2007, Plaintiff Zack Herrell was incarcerated at the

Great Falls Pre-Release Center in Great Falls, Montana.  (Court Doc.

27-1:  Herrell Depo. at 16:21-24).  On January 17, 2008, after finishing

a work shift pursuant to a work-release pass from the Pre-Release

Center, Mr. Herrell proceeded to drink alcohol and elected not to return

to the Pre-Release Center.  (Court Doc. 27-1:  Herrell Depo. at

18:16-25).  Therefore, at the time of the incident at issue, Mr. Herrell

was an escapee from the Pre-Release Center.  (Court Doc. 27-1:  Herrell

Depo.  at 19:5-12).

At approximately 7:00 p.m. on January 18, 2008, Mr. Herrell was

at the home of acquaintance Brian Sutherland where he had been

drinking. (Court Doc. 27-1: Herrell Depo. at 22:1-9; 39:20 - 40:8). At about that time, Defendants Officer Thomas Lynch and Sgt. Jeff Newton arrived at the Sutherland trailer for purposes of taking Mr. Herrell into custody pursuant to a felony warrant. (Court Doc. 27-1: Herrell Depo. at 22:10-13). Mr. Herrell knew the two officers were there to take custody of him, but he did not go to the front door or otherwise make himself available. (Court Doc. 27-1, at 22:14-18). Instead, he went from the living room of the Sutherland trailer to a back bedroom. (Court Doc. 27-1: Herrell Depo. at 22:19-22). Mr. Herrell was not planning on going back to the prerelease center and had dyed his hair for the express purpose of eluding arrest. (Court Doc. 27-1: Herrell Depo. at 42:6-9).

Mr. Herrell hid under a bed in the back bedroom, laid still, and stayed quiet while the officers searched for him, never coming forward or making his presence known. (Court Doc. 27-1: Herrell Depo. at 23:2-25). While hiding under the bed, Mr. Herrell made a concerted effort to conceal every part of his body underneath the bed, so he would not been seen. (Court Doc. 27-1: Herrell Depo. at 42:23-25). There was

no way for Officers Lynch and Newton to know whether Mr. Herrell had a weapon under the bed with him. (Court Doc. 27-1: Herrell Depo. at 43:1-9). The officers repeatedly made their presence known and ordered Mr. Herrell to show both of his hands. (Court Doc. 27-2: Newton Affidavit, ¶ 4).

In the course of attempting to arrest Mr. Herrell, Sgt. Newton grabbed Mr. Herrell's right arm, applied his Taser to the "drive-stun" mode directly to Mr. Herrell's right arm, and activated the unit for approximately three seconds. (Court Doc. 27-1: Herrell Depo. at 45:6-8; 47:13-19).

For the first one or two of the three seconds that the Taser was applied to his arm, Mr. Herrell does not recall saying anything, and thereafter, remembers asking the officers "What happened?" (Court Doc. 27-1: Herrell Depo. at 49:15-25; 50:1-2).

At his deposition, Mr. Herrell admitted the marks he said were left by the Taser were no longer visible (Court Doc. 27-1: Herrell Depo. at 65:21-25), he agreed no medical care provider advised him the Taser caused a grand mal seizure, (Court Doc. 27-1: Herrell Depo. at 64:4)

and he acknowledged that none of the booking documents at the Cascade County Detention Facility mention him having had a seizure on that occasion. (Court Doc. 27-1: Herrell Depo. at 55:1). Officer Newton saw no evidence of a seizure. (Court Doc. 27-2: Newton Affidavit, ¶ 5).

Pain compliance was the only reason Sgt. Newton employed the Taser on this occasion. Sgt. Newton utilized the Taser to stop a known felon, who was evading arrest, from further resisting a lawful arrest. Sgt. Newton utilized the Taser in the drive stun mode, as opposed to firing the Taser probes at Mr. Herrell, because this was a proven, effective means of obtaining pain compliance. This method results in less pain to the suspect. The Taser was utilized here for no other purpose than to effectuate a lawful arrest. (Court Doc. 27-2: Newton Affidavit, ¶¶ 4, 5).

The officers were unfamiliar with the Sutherland residence. Moreover, the residence was a trailer, which the officers knew from training and experience, was more dangerous because of fewer escape options. This presented the officers with a particularly dangerous

situation, especially considering Mr. Herrell was an escaped felon, was resisting capture, was under the influence of alcohol, and was not cooperative. (Court Doc. 27-2: Newton Affidavit, ¶ 3). While it ultimately became apparent that Mr. Herrell was hiding under a bed in that rear bedroom, that "cover" made the situation even more dangerous, because of concerns that Mr. Herrell might have a gun, knife or other weapon, and when he would not show both of his hands as repeatedly ordered, Newton grabbed his right wrist, and applied his Taser to the right arm. (Court Doc. 27-2: Newton Affidavit, ¶ 4).

When Newton and Lynch filed their written reports right after the incident, neither made any attempt to provide false or inaccurate information, in order to influence the filing of criminal charges against Mr. Herrell, but instead provided accurate information, each officer's report being consistent with the others. (Court Doc. 27-2: Newton Affidavit, ¶ 7).

Mr. Herrell was charged with both felony escape and misdemeanor obstructing a police officer, but later his lawyer told him that he would not be prosecuted for the obstructing charge, "… because

[he] had a couple of other things going at the same time," including an assault charge. (Court Doc. 27-1: Herrell Depo. at 27:18-20). Mr. Herrell admits having no evidence that the obstructing charge was dismissed because it lacked merit, (Court Doc. 27-1: Herrell Depo. at P. 28, ll. 7-12), states that he does not know why that prosecution was not followed through, (Court Doc. 27-1: Herrell Depo. at P. 28, ll. 3-5), and acknowledges that as a result of the escape charge which arose out of the same incident as the obstructing charge, he was incarcerated at Deer Lodge. (Court Doc. 27-1: Herrell Depo. at P. 28, ll. 19-24).

## II. ANALYSIS

### A. Excessive Use of Force

A claim that a law enforcement officer used excessive force in the course of an arrest or other seizure and while detained post-arrest but pre-arraignment is analyzed under the Fourth Amendment reasonableness standard. See Graham v. Connor, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); Forrester v. City of San Diego, 25 F.3d 804, 806 (9th Cir. 1994), cert. denied, 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1070 (1995); Pierce v. Multnomah County, Oregon,

76 F.3d 1032, 1043 (9th Cir. 1996).  "Determining whether the force

used to effect a particular seizure is 'reasonable' under the Fourth

Amendment requires a careful balancing of 'the nature and quality of

the intrusion on the individual's Fourth Amendment interests' against

the countervailing governmental interests at stake."  See Graham, 490

U.S. at 396 (citations omitted).  Whether a law enforcement officer's

use of force was "objectively reasonable" depends upon the totality of

the facts and circumstances confronting him.  Smith v. City of Hemet,

394 F.3d 689, 701 (9th Cir.) (en banc) (quoting Graham, 490 U.S. at

397, 109 S.Ct. at 1872), cert. denied, 545 U.S. 1128, 125 S.Ct. 2938, 162

L.Ed.2d 866 (2005).

   "The question is whether the officers' actions are 'objectively

reasonable' in light of the facts and circumstances confronting them,

without regard to their underlying intent or motivation."  Graham, 490

U.S. at 397 (citation omitted).  Reasonableness must be assessed from

the perspective of a reasonable officer on the scene, rather than with

the 20/20 vision of hindsight, and must allow for the fact that "police

officers are often forced to make split-second judgments-in

circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Graham, 490 U.S. 397.  The proper application of the reasonableness standard requires careful consideration of the specific facts and circumstances of each individual case, including, "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

While these are the most common considerations, they are not "a magical on/off switch that triggers rigid preconditions" to determine whether an officer's conduct constituted excessive force. Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1777, 167 L.Ed.2d 686 (2007). Consequently, courts consider other factors, such as "the quantum of force used," as well as "the availability of alternative methods of capturing or subduing a suspect." Davis v. City of Las Vegas, 478 F.3d 1048, 1055 (9th Cir. 2007); Chew v. Gates, 27 F.3d 1432, 1441 n. 5 (9th Cir. 1994).  Courts may also consider the demeanor of the suspect, and whether the suspect was fighting with the police or was intoxicated or

noncompliant.  See Davenport v. Causey, 521 F.3d 544, 551 (6th Cir. 2008) (collecting cases).

Cases alleging use of excessive force in violation of the Fourth Amendment "nearly always require[ ] a jury to sift through disputed factual contentions, and to draw inferences therefrom," and, therefore "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Lolli v. County of Orange, 351 F.3d 410, 415-16 (9th Cir. 2003)(citing Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)).

The Court must first look at the amount of force utilized.  Here, the nature and quality of the intrusion appears to have been minimal. There is no showing Mr. Herrell was injured.  While he alleges he suffered a seizure, there is no evidence to support such a claim.  In fact, there is no evidence of any ill effects from the Taser (except of course the intended momentary pain).  The evidence shows the Taser was used in the "drive-stun" mode which involves a touching of the Taser to the body which causes temporary, localized pain only.  In a recent Ninth Circuit decision, the appellate court described the use of the Taser in

the "drive-stun" mode as "painful, certainly, but also temporary and localized, without incapacitating muscle contractions or significant lasting injury."  Brooks v. Seattle, ___ F.3d___ 2010 WL 1135776 (9th Cir. March 26, 2010).[1]

In Brooks, the plaintiff, who was seven months pregnant, had refused to sign a speeding ticket after being stopped while dropping her child off at school.  The officers tazed her three times with a Taser in the "drive-stun" mode.  The Brooks court found the quantum of force in using a Taser in a "drive-stun" mode was less than intermediate.  See also Bryan v. McPherson, 590 F.3d 767 (9th Cir. 2009); Mattos v. Agarano, 590 F.3d 1082 (9th Cir. 2010).

The use of force in Mr. Herrell's case against an escaped felon was less than that utilized against a pregnant woman stopped for speeding while dropping her child off at school.

Mr. Herrell alleged in his Complaint that Defendant Lynch shot him with a Taser gun for no other reason than to amuse himself and Sgt. Newton who was present, "egged" Officer Lynch on and laughed.

_____

[1]A motion for hearing en banc has been filed in the Brooks case.

The undisputed facts presented in Defendants' Motion do not support Mr. Herrell's allegations.  Rather, Mr. Herrell was admittedly hiding from police officers who were attempting to execute a felony warrant for his arrest based upon his escape from the Great Falls Prerelease Center.  Mr. Herrell had been drinking and was hiding under a bed at the time of the arrest.  Given that he was hiding under the bed, there was no way for the officers to know whether Mr. Herrell was armed. This arrest was taking place in a back bedroom of a trailer home which Officer Newton testified was particularly dangerous.

The use of force (a three-second shock to the arm from a Taser in the "drive-stun" mode) was minimal.  The governmental interests were high.  Mr. Herrell was an escapee, there was no way to determine if he posed a threat to the officers because Mr. Herrell failed to comply with the officers commands, and he was actively resisting arrest and trying to evade the officers.

In balancing the nature and quality of the intrusion with the important governmental interests at stake, Defendants are entitled to summary judgement.

B.  Malicious Prosecution

Mr. Herrell alleges Defendants Lynch and Newton lied in their reports and had him charged with a misdemeanor which was subsequently dismissed.  Mr. Herrell also contends the officers gave two very different reports as to what happened.  "A police officer who maliciously or recklessly makes false reports to the prosecutor may be held liable for damages incurred as a proximate result of those reports." Blankenhorn v. City of Orange, 485 F.3d 463, 482 (9th Cir. 2007).

In this case, there is no evidence a false report was made.  Officer Newton testified that both himself and Officer Lynch filed accurate, consistent reports of the incidents.  Both reports are consistent with Mr. Herrell's deposition testimony.  There is no genuine issue of material fact regarding this claim and Defendants' Motion for Summary Judgment should be granted.

III.  CONCLUSION

Mr. Herrell has, as a matter of law, failed to produce sufficient evidence to overcome Defendants motion and summary judgment in favor of the Defendants is appropriate.

The Prison Litigation Reform Act prohibits prisoners from bringing forma pauperis civil actions if the prisoner has brought three or more actions in federal court that were dismissed for frivolousness, maliciousness, or for failure to state a claim.  28 U.S.C. § 1915(g).  This case should be designated a "strike" under this provision.  Based upon Mr. Herrell's admissions in his deposition and his failure to respond to the Motion for Summary Judgment, the Court should find Plaintiff's allegations frivolous.  For this same reason, the Court should certify that any appeal of this matter would not be taken in good faith.

Based on the foregoing, the Court issues the following:

## RECOMMENDATIONS

1.  Defendants' Motion for Summary Judgment (Court's Doc. 24) should be GRANTED.

2.  The Clerk of Court should be directed to enter judgment in favor of Defendants and close this case.

3.  The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g).

4.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  Mr. Herrell failed to produce any evidence to support his claims and as such, no reasonable person could suppose that an appeal would have merit.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Mr. Herrell may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.  Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order.  Martinez v.

Ylst, 951 F.2d 1153 (9th Cir. 1991).

This Order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1), should not be filed until entry of the District Court's final judgment.

DATED this 21ˢᵗ day of April, 2010.


                                     /s/ Keith Strong
                                    Keith Strong
                                    United States Magistrate Judge


FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE–
CV 08-0062-GF-SEH-RKS / PAGE 19 OF 19